STUART HANLON, SBN: 66104
LAW OFFICES OF STUART HANLON
179 11TH Street, 2nd Floor
San Francisco, California 94103
(415) 864-5600

Attorney for Defendant
EDMUND JEW

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> EDMUND JEW, <br><br> Defendant. | No. CR 07-0705 SI <br><br> **NOTICE OF MOTION AND MOTION FOR REQUEST OF EVIDENTIARY HEARING** <br><br> Date: March 21, 2008 <br> Time: 11:00 a.m. <br> Ctrm: The Hon. Judge Susan Illston |

TO: THE UNITED STATES ATTORNEY THROUGH ASSISTANT U.S. ATTORNEY MICHAEL LI-MING WANG AND THE ABOVE-ENTITLED COURT,

PLEASE TAKE NOTICE that on March 21, 2008 at the hour of 11:00 a.m. or soon thereafter before the Honorable Judge Susan Illston, the defendant through his counsel will request an evidentiary hearing to determine whether the government may have engaged in misconduct by failing to investigate the relationship between the defendant's former counsel and a prosecution witness and by failing to disclose to this Court the conflict of interest in the representation of Mr. Jew by his former counsel Steven Gruel. The facts presently known to the defendant raise a grave concern that the government ignored in its investigation of the defendant serious issues regarding the prior relationship between defendant's former counsel and a key government witness; how and why these allegations were initially brought against Mr. Jew by his

1

former attorney and other government witnesses; and how, ultimately, this inaction by the government violated Mr. Jew's constitutional rights.

The evidentiary hearing would allow the defendant and this Court to determine the extent of the prior relationship between defendant's former counsel Mr. Gruel and Leland Yee, a government witness, and the extent of knowledge the government had regarding this relationship and/or the government's choice to ignore the facts in order to build their case against Mr. Jew. The hearing would also provide a forum for the defendant to determine facts unknown to the defendant regarding communications between the government, Mr. Gruel, and government witnesses, Leland Yee and Jaynry Mak. It appears that Mr. Gruel and Mr. Yee had a prior attorney-client relationship that may have continued throughout Gruel's representation of Mr. Jew. Though it appears the government was concerned about the impropriety of this relationship from the beginning, the government stopped it's inquiry and never informed this Court of their concerns. The defendant believes that Mr. Yee, an elected offical sitting in the California legislature, and a former political supporter turned adversary of Mr. Jew, and Mr. Mak had personal motives to implicate Mr. Jew and that, had the government done what it should have done, and inquired into Mr. Gruel's relationship to Mr. Yee, it may have changed the nature of their investigation against Mr. Jew, and ultimately, whether Mr. Jew would have been charged in this case.

The defendant, at this time, is not alleging that the government did, in fact, engage in misconduct. Rather, the known facts raise serious issues and suspicion. The defendant, rather than make misconduct allegations, without sufficient evidence, requests an evidentiary hearing to see if there is a basis for a motion to dismiss.

s/Stuart Hanlon
CSBN: 66104
Attorney for Defendant
EDMUND JEW
179 11th Street, 2nd Floor
San Francisco, CA 94103
415/864-5600
stuart@stuarthanlonlaw.com

2

STUART HANLON, SBN: 66104
LAW OFFICES OF STUART HANLON
179 11TH Street, 2nd Floor
San Francisco, California 94103
(415) 864-5600

Attorney for Defendant
EDMUND JEW

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> EDMUND JEW, <br><br> Defendant. | No. CR 07-0705 SI <br><br> **MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR REQUEST OF EVIDENTIARY HEARING** <br><br> Date: March 21, 2008 <br> Time: 11:00 a.m. <br> Ctrm: The Hon. Judge Susan Illston |

## STATEMENT OF FACTS

The facts known to the defendant are very troubling; so troubling, that the defendant maintains that an evidentiary hearing is warranted to determine what was taking place between the government, former counsel for the defendant Steve Gruel, and government witnesses, from the beginning of this investigation against the defendant, and continuing for months until the filing of the Complaint and eventually, the Indictment. It appears from the discovery that the government may have been aware of a prior attorney-client relationship between the defendant's former attorney of record, Steven Gruel, and a government informant and witness, Leland Yee. It also apparent that the government was aware that a serious conflict of interest existed in the

3

representation by Mr. Gruel of Mr. Jew, but did not attempt to remedy the situation and prevent a violation of Mr. Jew's Fifth Amendment rights, and eventually his Sixth Amendment rights once criminal proceedings were enacted against the defendant.

On May 2, 2007, defense attorney Steven Gruel, reported to the FBI, through an interview with Agent Bruce Whitten, that he had received information Mr. Jew was involved in an extortion and bribery scheme.  (See Exhibit A.)   Mr. Gruel had been contacted by Leland Yee, a Senator for the State of California, and known political opponent of Mr. Jew.  Mr. Yee sought advice from Mr. Gruel regarding what Yee should do with information that Yee had regarding allegations of criminal activity by Mr. Jew.  Yee told Gruel that  Mr. Jew, as Supervisor of District Four in San Francisco, was taking money from local businesses in his district in exchange for "promises" that he would help them to maintain their business licenses.   Allegedly, this information came from Jaynry Mak who told Mr. Yee.  Mr. Mak is the father of the candidate (supported by Yee) who ran unsuccessfully against  Mr. Jew for the District Four seat.  Mr. Gruel took this information and called the FBI to inform them of the alleged criminal activity.  Gruel told the FBI that there was a business in Mr. Jew's District that was "out of code" and would be closed, but the owner's were approached by Mr. Jew who told them he could "make the problem go away" for $20,000 if the owner brought Jew the cash to his flower shop. The FBI 302 makes clear that Gruel presented this information as fact.  The information provided by Mr. Gruel instigated the federal criminal investigation against Mr. Jew.  Prior to receipt of this information, Mr. Jew was not under investigation by the federal government.  The FBI 302 summarizing Gruel's statement does not mention Gruel's prior relationship with Leland Yee or why Yee would contact Gruel rather than going directly to the FBI or local law enforcement authorities.

Just over two weeks after going to the FBI with information about the alleged criminal activities committed by Mr. Jew, on May 20, 2007, attorney Steven Gruel entered into a written contract with Mr. Jew for representation involving the federal criminal investigation against Mr.

Jew, that Gruel himself had initiated, and the potential federal charges. Contained in this contract was a "disclosure and waiver." (See Exhibit B.) The "disclosure and waiver" stated that an "individual" had contacted Gruel and told Gruel that Mr. Jew had been involved in "an alleged unlawful attempt to obtain money from a business with respect to a San Francisco Permit." The statement stated that Gruel had verbally passed this information on to the FBI. The statement did not mention the name of the individual who contacted Gruel with this information or Gruel's prior, and current, relationship with this individual, or the antagonistic relationship between Yee, Mak, and Jew.  Further, Mr Jew was referred to attorney Gruel by Barbara Meskunas, a close associate of Leland Yee and acquaintance of Gruel. At the time of the referral she was employed as an aide to Supervisor Jew.

In a letter dated May 28, 2007 by AUSA Michael Wang to Steve Gruel, it is clear that discussions have taken place between Gruel and Wang concerning Gruel's representation of Mr. Jew. (See Exhibit C). Mr. Wang states:

> ". . .in response to your letter of May 23, 2007, expressing your intention to continue representing Ed Jew, as well as your opinion that you are not a witness in this matter in spite of your role in referring the matter to law enforcement." (Id.)

Mr. Wang requests a copy of the written waiver that Gruel obtained from Mr. Jew. Mr. Wang also requests the name and a description of the role an "associate counsel" will have in representing Mr. Jew that Gruel states he has hired "to ensure that any appearance of impropriety will be dissipated." (Id.)

On June 12, 2007, Mr. Wang renews his request for the written waiver from Gruel. In the letter he states, "Absent that waiver, I may be forced to file an ex parte submission concerning your purported representation of Mr. Jew at the appropriate time in the future." (See Exhibit D.)

Gruel responded to the above requests on June 14, 2007. In this letter to Wang, he states that he does not believe there is a conflict, but that he will obtain permission from Mr. Jew to disclose the waiver- a waiver that was only obtained by Mr. Gruel "merely in an abundance of caution." (See Exhibit E.)

On July 4, 2007, Gruel forwards a redacted copy of his fee agreement with Mr. Jew. In this letter he tells Mr. Wang that he does not agree that Wang is entitled to this redacted document nor does he believe that a conflict exists. (See Exhibit F.) The disclosure does not mention the name of the individual who told Gruel the information he passed on to the government nor does it mention the relationship that Gruel had with this individual. There is no statement that Jew agreed with the exchange of information with the government and his attorney or that he knew the identity of the person who had contacted Gruel- an influential political enemy.

On September 20, 2007, a Complaint was filed against Mr. Jew alleging violations of 18 U.S.C.§ 1341 and 1346: Mail Fraud. On October 2, 2007, Leland Yee was interviewed by the FBI regarding the alleged criminal activity committed by Ed Jew. (See Exhibit G.) The FBI 302 provided by the government does not mention anything about Yee's previous conversation(s) with Mr. Gruel, their prior relationship or Yee's motive to fabricate evidence and false charges against Supervisor Jew.

On November 6, 2007, an Indictment was filed against Mr. Jew charging him with violations of 18 U.S.C.§ 1341 and 1346: Mail Fraud; 18 U.S.C.§ 666(a)(1)(B): Bribery; and 18 U.S.C.§ 1951(a): Extortion Under Color of Official Right. On December 11, 2008, Stuart Hanlon filed papers to substitute in as attorney of record.

The above facts raise several questions regarding what was really occurring from the moment these accusations were made against the defendant until the filing, months later, of the Indictment against Mr. Jew. It is not only concerning, but baffling, that the accusations that began this entire investigation came from Mr. Jew's own attorney. It is clear, through the letters Wang sent to Gruel, that this also concerned the government. However, once the "waiver" was produced, it seems the government turned a blind eye to this conflict and to investigating the prior relationship between Gruel and Yee and what, if any, continuing relationship they had as Gruel was representing Mr. Jew. The government never questions Gruel or Yee during their

interviews about their prior relationship; what type of relationship that they continued to maintain after Gruel was hired by Mr. Jew; or whether Gruel advised Mr. Yee about debriefing with the government or possible testimony before the grand jury[1]. The defendant asserts that, not only should the government have done it's duty to ensure there were no improprieties in the possible dual representation by Gruel of both Yee and Mr. Jew by questioning both Gruel and Yee, the government should have brought this conflict to the Court's attention to ensure that the Court, and Mr. Jew, were fully aware of the potential, and actual, conflicts. Furthermore, the defendant believes that had the government investigated further into this conflict, it would have also uncovered the political motivations behind these accusations against Mr. Jew which may have changed the entire nature of this case. The defense believes that there existed at the time a business and political relationship between Assemblyman Yee and the Quickly owners and suppliers, the alleged victims of extortion and bribery by Mr. Jew.

An evidentiary hearing would allow the defendant to determine if Gruel and Yee had a prior attorney-client relationship; if Gruel and Yee continued this relationship during his representation of Mr. Jew; if Yee had a relationship with the Quickly owners and suppliers and if Gruel knew of this ; if Gruel and Yee discussed Yee's debriefing with the FBI in October 2007 or, perhaps, his testimony in front of the grand jury. It is unknown to the defendant whether Mr. Yee testified at the grand jury, but clearly any discussions between Gruel and Yee about his testimony when Gruel is representing Mr. Jew creates a situation where Gruel's continued representation of Mr. Jew, while representing a government witness in the case against Mr. Jew, would violate Mr. Jew's constitutional rights if the government was aware, or should have been aware, of these facts and did nothing to bring this to the Court's attention or to prevent this from occurring. Furthermore, an evidentiary hearing may show that the government's failure to investigate these issues not only may have been misconduct on their part, but that the

---

[1] The defendant does not know if Mr. Yee testified before the grand jury that indicted Mr. Jew.

7

government's failure to act allowed for a criminal investigation of Mr. Jew to take place that was tainted from the beginning by Leland Yee and Jaynry Mak.

**ARGUMENT**

The facts known to the defendant are unnerving and raise an implication that there are many facts that remain unknown that may show the defendant's constitutional rights were violated. A defendant's Fifth Amendment rights are violated when the government interferes with the attorney-client relationship which results in ineffective assistance of counsel or when the government engages in outrageous misconduct. United States v. Marshank, 777 F.Supp. 1507 (N.D. Cal. 1991) Court s have held that, although an indictment may be dismissed only in flagrant cases of prosecutorial misconduct, even unintentional misconduct may be sufficient. U.S. v. Samango, 607 F.2d 877 (1979). What is known, is that the government knew that Mr. Jew was being represented by the exact person who started the criminal investigation against him. What isn't known is whether the government knew that Leland Yee and Steven Gruel had a prior attorney-client relationship or whether the government chose to turn their heads and look the other way because Yee is a witness in their case against Mr. Jew. It is highly questionable that neither Gruel or Yee were asked about their prior relationship during their interviews or in the letters from AUSA Wang. No questions are asked, at least according to the discovery in possession of the defendant, as to why Yee chose Gruel to contact with this information, what type of prior relationship was established between attorney Gruel and Yee or whether the relationship between Gruel and Yee continued after he began representing Mr. Jew.

The facts raise an inference that the government had an affirmative duty to inform this Court that there was a significant conflict in the representation of Mr. Gruel in that Mr. Gruel referred the alleged criminal activity to the FBI; Gruel had a prior attorney-client relationship with a key government witness; and that Gruel is a witness against Mr. Jew, his own client. All of there factors were known, or should have been known, to the government, yet the government did not attempt to make these inquiries or inform this Court. The government "is not entitled to

take advantage of conflicts of interest which the defendant and the court are unaware." United States v. Marshank, 777 F.Supp. 1507 (N.D. Cal. 1991) (Fix cite) The government should have been concerned that the "waiver" did not include the identity of the source- Leland Yee- nor any further acknowledgment by Mr. Jew that he was aware of the full extent of the conflict or the communications between the government and his attorney.

The defendant's Sixth Amendment rights, which attached when criminal proceedings against Mr. Jew were enacted, may have also been violated. The defendant has the right to counsel " whose loyalties are undivided" and the government may not circumvent this right. United States v. Partin, 601 F.2d 1000, 1006 (9th Cir. 1979). In the present case, an evidentiary hearing would enable the defendant to determine if such an intrusion by the government took place. The complaint was filed against Mr. Jew in September. Leland Yee was interviewed by the FBI in October.[2] The Indictment against Mr. Jew was filed in November. The defendant questions whether Gruel was still advising Yee during this time, thus representing a witness in a case against his own client, and whether the government knew about this relationship or failed to investigate it in order to continue with it's case against Mr. Jew. Both scenarios, if either are correct, create a situation where the government impeded the protections afforded to Mr. Jew by the Sixth Amendment.

An evidentiary hearing into what facts were known or unknown to the government from the time Gruel gave his statement to the FBI that led to the investigation against Mr. Jew may also uncover an investigation of Mr. Jew by the government that was clouded by political backstabbing and manipulation from key government witnesses. This appears to have been a calculated attack on Mr. Jew that was organized from the beginning by Mr. Yee, Jaynry Mak and the alleged victims. The present circumstances that Yee, who has a relationship with the victims, is told by Mak, the father of Mr. Jew's political opponent, that Mr. Jew is committing these alleged crimes, and then Yee goes to Gruel who then becomes Mr. Jew's attorney, creates more

---

[2] Again, it is also possible that Mr. Yee testified at the grand jury during this time.

than a suspicion that calculated orchestrating was going on here. The questions remaining to be answered, that are unknown to the defendant, is whether the government knew what was occurring and chose to ignore it, was fully aware and actively participating, or simply did not know what was going on and has been itself used in this scheme.

The defendant anticipates the following witnesses would be necessary at an evidentiary hearing:

1. Steven Gruel
2. Leland Yee
3. Barbara Meskunas
4. Michael Wang
5. Bruce Whitten
6. Edmund Jew

## **CONCLUSION**

For the above reasons, Mr. Jew respectfully requests this Court grant the defendant an evidentiary hearing to determine whether Mr. Jew's constitutional rights have been violated.

Dated: February 19, 2008             Respectfully Submitted,

s/Stuart Hanlon
CSBN: 66104
Attorney for Defendant
EDMUND JEW
179 11th Street, 2nd Floor
San Francisco, CA 94103
415/864-5600
stuart@stuarthanlonlaw.com

1  STUART HANLON, SBN: 66104
   LAW OFFICES OF STUART HANLON
2  179 11TH Street, 2nd Floor
   San Francisco, California 94103
3  (415) 864-5600

4  Attorney for Defendant
   EDMUND JEW

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | No. CR 07-0705 SI |
| ) | |
| Plaintiff, ) | **DECLARATION OF COUNSEL IN** |
| ) | **SUPPORT OF DEFENDANT'S MOTION** |
| v. ) | **FOR REQUEST OF EVIDENTIARY** |
| ) | **HEARING** |
| ) | |
| EDMUND JEW, ) | Date: March 21, 2008 |
| ) | Time: 11:00 a.m. |
| Defendant. ) | Ctrm: The Hon. Judge Susan Illston |
| ) | |
| _____ ) | |

I, Stuart Hanlon, declare under penalty of perjury as follows:

1. I am an attorney duly licensed to practice law in the Northern District of California and before this Court. I am the attorney of record for the defendant, Edmund Jew.

2. I am informed and believe after speaking with my client that there was not full disclosure of all relevant facts by Steven Gruel to Mr. Jew in the waiver signed by Mr. Jew and in the discussions between Mr. Gruel and Mr. Jew regarding the potential conflict.

3. I am informed and believe after speaking with my client that Mr. Jew was not told by Steven Gruel the identity of the person who informed Mr. Gruel about Mr.

11

Jew's alleged criminal activity, Leland Yee, when Mr. Jew signed the waiver of conflict.

4. I am informed and believe after speaking with my client and conducting investigation that Leland Yee is a political enemy of Mr. Jew.

5. I am informed and believe after speaking with my client and conducting investigation that Leland Yee has close ties to the alleged victims in this case.

6. I am informed and believe after speaking with my client and conducting investigation that Barbara Meskunas referred Mr. Jew to Steven Gruel and that Ms. Meskunas has a close relationship with Leland Yee and is an acquaintance of Steven Gruel.

7. I am informed and believe after speaking with my client and conducting investigation that Jaynry Mak is the father of the woman who ran against Mr. Jew in the election for District Four Supervisor.

8. I am informed and believe through my investigation of this case that Steven Gruel and Leland Yee had a prior business and personal relationship and in all likelihood an attorney-client relationship prior to May 2007.

9. All of the documents attached to this motion were given over in discovery to former counsel Steven Gruel by Mr. Wang who then provided then to me. Executed this 13th day of February, 2008, at San Francisco, California.

s/Stuart Hanlon
CSBN: 66104
Attorney for Defendant
EDMUND JEW
179 11th Street, 2nd Floor
San Francisco, CA 94103
415/864-5600
stuart@stuarthanlonlaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

13